Glennon, J.
(dissenting): This= proceeding is based upon the recent addition to the Commercial Rent Law (L. 1945, eh. 3, as amd.) which provides, in substance, that any person who occupies commercial space as sublessee of a tenant is to be subject to the obligations and liabilities of the tenant of the landlord, except that where the sublessee occupies only a portion of the tenant’s entire space he is to pay the landlord, as rent, the proportion which the space he occupies bears to the entire rent which the tenant is or was obligated to pay (Commercial Rent Law, § 4, subd. 4, par. [b], as added by L. 1950, ch. 327). The main issue on this appeal is whether the appellants are sublessees within the meaning of the 1950 amendment.
The facts in this ease may be briefly summarized as follows: the entire premises were leased to Childs Company, who in turn sublet portions of the commercial space to appellants. In June, 1944, Childs Company vacated the *1107 premises and immediately thereafter on June 14, 1944, the landlord leased to the appellants, under written leases, the commercial space they formerly occupied as subtenants of Childs Company. At that time there were no emergency laws governing the rental of commercial space so that petitioner, as landlord, was free to acquire possession of the space and lease it to others if it so desired. By entering into leases with the appellants petitioner accepted them as prime tenants and they unquestionably continued as such, at least during the effective period of the leases. The problem appears to be the effect of appellants’ repudiation of their respective leases.
The Commercial Bent Law was first adopted and became a law in January, 1945 (L. 1945, ch. 3). Subsequent to its enactment appellants repudiated their leases, whereupon petitioner brought a proceeding to fix a reasonable rent for appellants’ space pursuant to the provisions of the emergency rent laws. Applying the statutory formula, Special Term found that the landlord was receiving a reasonable return from its property, and held that appellants could not be charged more than the emergency rent which under the statute was 15% above the rent payable on March 1, 1943, for the space involved in that proceeding. Since the rent payable for such space on the freeze date was the rent paid by appellants as subtenants, the emergency rent was fixed at 15% above those rentals. On appeal, this court unanimously affirmed and leave to appeal was denied by the Court of Appeals (Matter of 184 Realty Corp., 270 App. Div. 922, motion for leave to appeal denied 296 N. Y. 1059).
The repudiation of the leases did not return appellants to their former status as subtenants subject to dispossess proceedings. It merely changed their position from tenants under written leases to statutory tenants (Viro Realty Corp. v. Belmont, 275 App. Div. 283, affd. 300 N. Y. 562). In the Viro Realty case the tenant obtained possession by entering into a lease which he never intended to honor and subsequently repudiated, nevertheless the court permitted him to remain in possession as a statutory tenant. It may not be said that appellants, who were in possession of their respective space at the time they entered into the leases, placed themselves in a worse position than the tenant in the Viro Realty case by taking advantage of the protective provisions of the emergency legislation in repudiating leases made when the enactment of rent control laws was imminent. Even if it be said that by their repudiation, appellants reverted to their status as subtenants, we again have an election on the part of petitioner to accept appellants as its tenants. At that time there was no provision m the statute protecting a subtenant, of a tenant who had vacated, in its possession of the portion of the space it occupied (Valeray Real Estate Co. v. National Transp. Co., 270 App. Div. 805). Petitioner did not seek to regain possession as in the Valeray case, but instead instituted a proceeding to fix a reasonable rent of appellants’ space. In so doing it necessarily accepted appellants as its tenants, since there was no authority in the law for a proceeding by a landlord to fix a reasonable rent of a subtenant of a prime tenant. Such a proceeding to be brought by the subtenant’s immediate lessor. The decision in the prior proceeding was not based on a finding that appellants were subtenants, but rather on a finding that petitioner was entitled, to no more than the emergency rent from the space involved, which was determined to be 15% above what appellants had been paying as subtenants. The same result would have obtained if the space at that time was occupied, by persons who had not been subtenants of Childs Company.
*1108 Appellants, therefore, are clearly tenants, and the amendment by its very terms can have no application to them. By express language its applicability is limited to such persons “who shall occupy or use commercial space as sublessee or subtenant of a tenant.” It comprehends only those who were, or became subtenants of a tenant after the effective date of the amendment and not those who may have been subtenants in the past. Also, they must be subtenants of a tenant. If appellants are subtenants, then who is the tenant? Surely the Legislature did not intend to complicate an already confused subject by the creation of fictitious tenancies.
The provision that the rent payable is to be determined on the basis of the entire rent which the tenant “ is or was ” obligated to pay the landlord does not suggest a legislative intent to have the amendment apply in a case where those proceeded against are no longer subtenants. As I read the provision the word “was”, as used, was intended to cover a situation where the main tenant vacates and the landlord is unwilling to accept the remaining subtenants as its own tenants. In such circumstances the landlord may, under the provisions of the amendment, require the remaining subtenants to pay their proportionate share of the entire rent which the prime tenant “was” obligated to pay. If “was” had been omitted, then such relief under the amendment could be obtained by a landlord only where there was a tenant who “ is ” obligated to pay the entire rent. To be sure petitioner seeks to have appellants’ rent fixed on the basis of the entire rent which Childs Company “was” obligated to pay while it was a tenant. However, appellants are no longer subtenants, having been accepted as tenants by petitioner in June, 1944, and become statutory tenants of petitioner when the leases were repudiated.
Accordingly, I dissent and vote to reverse the order appealed from and to grant the motion to dismiss the landlord’s petition under rules 106 and 113 of the Rules of Civil Practice.
Peek, P. J., Dore, Van Voorhis and Shientag, JJ., concur in Per Curiam opinion; Glennon, J. dissents and votes to reverse and grant the motion, in dissenting opinion.
Order affirmed, with $20 costs and disbursements to petitioner-respondent. [See 278 App. Div. 824.]